UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21841-CIV-GRAHAM

JORGE BARRERA, et al.,

    Plaintiffs,
v.

WEISS & WOOLRICH SOUTHERN
ENTERPRISES, INC., et al.,

    Defendants.
_____/

### DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DEFENDANTS' MOTION TO COMPEL SETTLEMENT

Defendants, ("Defendants"), through their undersigned counsel, file these Objections to the Magistrate Judge's Report and Recommendation on Defendants' Motion to Compel Settlement, and in support state:

### BACKGROUND

The Defendants filed a Motion to Compel Settlement of this case that details how there was a firm offer and an acceptance of that offer that constitutes a contract under Florida law. The only real defense that was raised to the Motion to Compel Settlement by the Plaintiffs was the allegation that Plaintiffs' counsel made the firm offer without having his clients' consent and therefore his clients were not bound by it. Plaintiffs' counsel has filed approximately 600 FLSA cases, has practices for 27 years, and is in his mid-50s. Defense counsel found it patently unworthy of belief that Plaintiffs' counsel would have made a firm offer without the consent of his client, and therefore filed motions to compel settlement in this case, and in *Ramos*, *Orellana*, and *Suchite*. At a minimum, had Plaintiffs' counsel made a firm offer without having his clients' consent, such negotiation tactics are *per se* bad faith. Attorneys do not just go around and provide firm offers, and

then say, "Sorry, I really did not have my client's consent." In the related cases, a similar motion to compel settlement was filed; in fact similar motions were also filed in *Ramos*, *Orellana*, and *Suchite*.

In this case, Magistrate Goodman held an evidentiary hearing on the issue as to whether the Plaintiffs consented to the firm offer. The Defendants were going to call the Plaintiffs to the stand to question them about whether they had given their consent, but Mr. Marban, the same Plaintiffs' counsel as in this case, testified under oath that never in his career, including this case, had he made an offer to settle where he did not have his client's consent. Mr. Marban testified as follows, in pertinent part:

> Q: Now, you've handled approximately 600 FLSA cases; isn't that true?
>
> A: I guess you know better than I do, but it's been quite a few.
>
> Q: And you've said 99 percent of these you've settled so that's – that's –
>
> A: Giving a number. The majority of them have settled, the vast majority in the 90s.
>
> Q: So you're over 500 in settlements, then, that you've handled of these?
>
> A: I don't know, I'd be guessing, but the vast majority have settled. Maybe 98, 97 percent, but I'm telling you that –
>
> Q: Have you ever settled any without your client's consent?
>
> A: Of course not.
>
> Q: So you've never just told a defendant, "Oh, hey, yeah, we'll settle it for $20,000", and you never spoke to your client, you had no clue if he would agree to that or not. You've never done that in your career, have you?
>
> A: Of course not.
>
> Q: So obviously then you didn't do it in this case either.
>
> A: Of course not.

[D.E. 554 at 84-85] (attached hereto as Exhibit 1).  Thus, it was clear to defense counsel that Plaintiff's counsel admitted that he had his client's consent, including in this case and in *Ramos*, *Orellana*, and *Suchite*.

The Magistrate's opinion in this case finds the following that the Defendants contest:  1) "Marban also testified that he would never settle a case without client authorization and he never affirmatively represented to Kleppin that he had unanimous client authorization to effect the discussed global settlement"; 2) "Kleppin testified that had no evidence to refute Marban's repeated and unequivocal testimony that he did not have consent of all of his clients to enter into the global settlement which Kleppin seeks to enforce on behalf of his clients"; 3) "the party seeking to enforce a settlement agreement bears the burden of showing that the attorney proposing the settlement had the clear and unequivocal authority from his client to do so"; 4) Marban clearly testified that he neither made a definite offer nor, more importantly, that he ever had, or even represented that he had, unanimous consent to settle.  Kleppin's speculation to the contrary was only that—speculation"; 5) "Florida law clearly requires that an attorney have a clear and unequivocal authority from his clients to settle a case.  Defendants offered no evidence that all of the relevant plaintiffs provided this authority or in any way consented to the purported global settlement agreement.  The only evidence that regarding consent was Marban's testimony – which was precisely to the contrary.  Marban testified that as of the time of the global settlement discussions in question:  (a) he had only spoken to 'seven or eight' of his clients; and (b) that he did not have unanimous client authority to settle."

Concerning the first issue, Marban did not affirmatively represent to Kleppin that he had his clients' authority, as lawyers do not do that, as that is implied—lawyers, including Mr. Marban, as Mr. Marban plainly testified, do not make firm offers without their client's consent (because to do so would be to negotiate in bad faith), and thus, as the quoted-portion above from the hearing makes

3

clear, in this case, when Mr. Marban made the firm offer, he did have his clients' consent, which is what the R&R overlooks. Never have defense counsel heard a lawyer preface a settlement discussion with "I have my client's consent to make this offer, by the way."

Concerning the second issue, Kleppin's testimony came before Mr. Marban's testimony on cross-examination near the end of the hearing that he has never made an offer without his client's consent, as set forth above. Concerning the third issue, we agree with the legal rubric quoted by the R&R, but assert that Mr. Marban's above-quoted testimony requires the conclusion that the Defendants established that at the hearing.

Concerning the fourth issue, there is no issue about whether Mr. Marban made a firm offer because he never wrote back saying that he did not make a firm offer, but rather only stated that he did not have the consent of his clients when he made the offer which is not true. The e-mails introduced into evidence at the hearing make clear that there never was an issue whether a firm offer was conveyed, only whether the Plaintiffs consented. This is also why the fifth issue is without merit. Mr. Marban plainly testified that he has never made a settlement offer in a case without his client's consent and that he did not do so in this case either. There is no record evidence that the offer made by Mr. Marban as confirmed in the e-mails of June 10, 2011 is not accurate. Mr. Marban's testimony was not to the contrary, only on direct examination. On cross-examination, Mr. Marban's testimony is quoted above, which requires the conclusion that he did have the consent of his clients.

Plaintiffs' counsel's actions bind his clients. *Link v. Wabash Ry. Co.*, 370 U.S. 626, 633-34 (1962). The Court should sustain these Objections to the Magistrate Judge's R&R, and hold that the defense to the enforcement of the contract, lack of consent, was not proven by the Plaintiffs.

Before, during, and after the trial in the *Barrera* case, the Defendants have repeatedly attempted to settle that case with the Plaintiffs as well as the other cases that Mr. Marban has

brought against them (*Ramos*, *Orellana*, and *Suchite*).  Unfortunately, their attempts have been met with the failure of the Plaintiffs to provide a concrete settlement demand or offer.  On Friday morning, June 10, 2011, the Plaintiff made a firm offer to the Defendants about globally settling this case, the *Ramos* case, the *Orellana* case, and the *Suchite* case to resolve all outstanding issues (including attorneys fees and costs) and all of the litigation that involves all parties in those cases for a sum of money (which is confidential), and various typical terms (no admission of liability, dismissal of all claims, and confidentiality).  Plaintiffs' counsel stressed that the settlement had to be accepted on or before the status conference set in *Barrera* for Tuesday morning, June 14, 2011.  The Defendants in those cases were C.G.R. Construction Co., Inc., Weiss & Woolrich Southern Enterprises, Inc., Tecta America South Florida, Inc., Henry Gembala, and in *Suchite* Chris Kleppin and Glasser, Boreth & Kleppin.  That offer was confirmed in writing by Mr. Kleppin to Plaintiffs' counsel, which confirmation was not challenged.  (*See e-mail*, June 10, 2011, attached hereto as Exhibit 2).  After the confirmation was sent and received, a telephone call took place between Mr. Marban and Mr. Kleppin during which Mr. Marban expressed that he learned one or two Plaintiffs in *Barrera* were initially expressing their desire not to consent to the settlement.  However, during that call, Mr. Marban did not retract the offer, modify the offer, withdraw the offer, or revoke the offer.  Minutes later, that offer was accepted in writing by the Defendants.  (*See e-mail*, June 10, 2011, attached hereto as Exhibit 3).  The Plaintiffs responded by stating that the *Barrera* Plaintiffs do not consent to the settlement, which is belied by the fact that in order to have conveyed the offer in the first place, ethically, Mr. Marban would have had to obtain the Plaintiffs' consent, and that consent was certainly implied given the specificity of the offer.  *See id.*

The Defendants provided proposed settlement agreements in all of the cases on Friday, June 10, 2011.  Unfortunately, the Plaintiffs are now taking the position that there is no settlement because some of the *Barrera* Plaintiffs do not want to consent.  The problem for the Plaintiffs is that

5

their counsel's action (provision of the offer) binds them. *Link v. Wabash Ry. Co.*, 370 U.S. 626, 633-34 (1962). Thus, even if the attorney was wrong about the Plaintiffs' intentions to settle or to not settle, the Plaintiffs are bound because in "our system of representative litigation . . . [ ] each party is deemed bound by the acts of lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash Ry. Co.*, 370 U.S. 626, 633-34 (1962). The Defendants find these disturbing events troubling, because the consent of the *Barrera* Plaintiffs was implied when the offer was conveyed. Given the above facts, particularly Plaintiff's counsel's admission that he had the consent of his client in this case to settle, the Court should compel settlement, because basic contract principles require the conclusion that there has been an offer and a settlement, and because the Eleventh Circuit favors settlement.

## MEMORANDUM OF LAW

"A district court has jurisdiction to enforce settlement agreements when one party refuses to abide by the agreement prior to dismissal." *Le Bon Pain, Inc. v. Guyon and Co.*, 720 S. Supp. 983, 984-85 (S.D. Fla. 1989) (citing *Kent v. Baker, III*, 815 F.2d 1365, 1398 (11th Cir. 1987)). This enforcement authority covers not only written but also oral settlement agreements. *Welch v. North Am. Tank Line, Inc.*, 2008 WL 3982394, *2 (M.D. Fla.). "Indeed, the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." *South Beach Suncare, Inc. v. Sea & Ski Corp.*, 1999 WL 350458, *6 (S.D. Fla.).

"A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987) (citing *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985)). Florida applies an objective test to determine whether a contract or a settlement may be duly enforced. *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) (noting that the test considers not

6

whether there was an "agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing").

Specifically, under Florida, "[t]o compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2003) ("uncertainty as to nonessential elements will not preclude enforcement of a settlement agreement"). Actual execution of a settlement agreement is not a prerequisite to the enforcement of a settlement agreement, but merely a procedural formality. *See Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1996). In fact, oral settlement agreements are often enforced by the courts, and such is governed by the law of contracts generally. *Enriquez v. Williams*, 2010 WL 3608463 (M.D. Fla.) (enforcing oral agreement, and holding that it was a settlement); *Hayes v. Nat'l Servs. Industries*, 196 F.3d 1252, 1254 (11th Cir. 1999).

To determine whether a contract was entered into, courts apply traditional notions of offer and acceptance and to basic contract law, *Robbie*, 469 So. 2d at 1385, and apply a preponderance of the evidence standard. *Welch v. North Am. Tank Line, Inc.*, 2008 WL 3982394, *2-3 (M.D. Fla.). However, the courts apply the rubric that "[s]ettlement agreements are highly favored, and will be enforced whenever possible." *Robbie*, 469 So. 2d 1385; *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that "[w]e favor and encourage settlements in order to conserve judicial resources. We cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the settlement."); *Lanza v. Damian Carpentry, Inc.*, 6 So. 3d 674, 675 (Fla. 1st DCA 2009) (rejecting attempt to repudiate a binding settlement agreement by raising ancillary issues after settlement had taken place).

In this case (and in fact in all of the cases), the litigation has been quite protracted. However, the offer and the acceptance are clear, and are certainly clear in order for the Court to enforce the settlement. Accordingly, the Defendants respectfully request that the Court do just that. No comment was made by Magistrate Goodman to the admission of Mr. Marban that is set forth above. In Defendants' opinion, Plaintiff's counsel would never have made an offer without the consent of his client (defense counsel knew this at the time), and that he did not (even though he said that he did at one point), which is borne out by Mr. Marban's testimony at the evidentiary hearing in *Barrera* where it was easily and readily established that he has never made an offer to settle a case, including this case, without the consent of his client. Therefore, the only defense to the Motion to Compel Settlement, that the client's had not consented, should be rejected, and the Court should reverse the Magistrate's Order, and compel settlement. The Defendants reiterate, to the extent that it is necessary, that they are not trying to impugn anyone's ethics or reputation, but rather simply attempting to compel a settlement and end four cases that have caused great economic and reputational harm to a roofing company that did not violate the law, as the verdict in *Barrera* so clearly demonstrates.

## **CONCLUSION**

For the foregoing reasons, the Court should sustain the foregoing Objections to the Magistrate Judge's Order [D.E. 553], and hold that the four cases were settled.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Eddy O. Marban, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

        Glasser, Boreth & Kleppin
        Attorneys for Plaintiff
        8751 W. Broward Blvd.
        Suite 105
        Plantation, FL 33324
        Tel. (954) 424-1933
        Fax (954) 474-7405
        E-mail: Glabor@aol.com

        By__s/Chris Kleppin_____
           Chris Kleppin
           Fla. Bar No. 625485